IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENNETH M. KEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Case No. 04-277-JPG |
| **STEVEN KEIM,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the Court is Defendant's Motion for Summary Judgment. **(Doc. 15)**. Defendant Keim filed a Memorandum in Support **(Doc. 16)**, which is accompanied by exhibits, including affidavits, records concerning plaintiff's religious diet, and portions of plaintiff's deposition.

Defendant served upon the *pro se* plaintiff the notice required by ***Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)**. **(Doc. 17)**. Plaintiff filed a Response and various exhibits. **(Docs. 21 and 23)**. Defendant filed a Reply, **Doc. 22.**

### Nature of Plaintiff's Claims

Plaintiff Kenneth Key is an inmate in the custody of the Illinois Department of Corrections. He brings suit under 42 U.S.C. §1983 for violation of his First Amendment right to practice his religion.[1]  He alleges that defendant Keim, who was employed as the chaplain at

---

[1] Although the order on preliminary review made passing reference to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc, et. seq., plaintiff did not invoke that statute in his complaint.

Menard Correctional Center, denied his requests for a kosher diet in 2003 and 2004. He also claims that Keim refused to authorize his possession of some religious tapes that came in the mail for him.

In the present motion, defendants seek summary judgment because, at the relevant time, plaintiff was a member of a religion which followed a vegan, not kosher diet. Defendant also suggests that he was not involved in refusing to allow plaintiff to have the tapes,

### Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See,** *Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

2

**475 U.S. 574, 586 (1986).**  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, **477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. *Anderson*, **477 U.S. at 248; see also,** *JPM Inc. v. John Deere Industrial Equipment Company*, **94 F.3d 270, 273 (7th Cir. 1996).**  Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment.  Disputes as to irrelevant or unnecessary facts do not preclude summary judgment.  *Clifton v. Schafer*, **969 F.2d 278, 281 (7th Cir. 1992).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed.  *Duncan v.Duckworth*, **644 F.2d 653, 655 (7th Cir.1981).**

## Analysis

The First Amendment to the Constitution of the United States protects the "free exercise" of religion.  "An inmate retains the right to exercise his religious beliefs in prison."  *Kaufman v. McCaughtry*, **419 F.3d 678, 681 (7th Cir. 2005) (citing** *Tarpley v. Allen County*, **312 F.23d 895, 898 (7th Cir. 2002)).**

> The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden.  It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.

*Hernandez v. C.I.R.* **490 U.S. 680, 699 (1989) (internal citations omitted).**

Although prisoners retain their First Amendment right to the free exercise of religion, prison officials may enforce policies and regulations which limit the exercise of religious

3

practices. "To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." ***O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987)**. Prison regulations or policies that impinge on an inmate's First Amendment rights are valid if they are reasonably related to a legitimate penological interest. ***Shaw v. Murphy*, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476 (2001)**; ***Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).**

"[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection." ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1429 (1981)**. At the same time, prisoners' constitutional rights may be restricted by the fact of confinement and the needs of the penal institution. *See **Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538  (1977).** "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." ***Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996).** "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests. ***Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)**. Whether other avenues remain available for the exercise of the asserted right is one of the key tests of "reasonableness." ***Turner*, 482 U.S. at 90.**

Plaintiff's complaint alleges that, after designating himself as a member of the *House* of Yahweh, he requested a kosher diet in writing beginning on February 21, 2003. Keim wrote

4

back requesting that plaintiff provide written verification of his membership in a faith group which requires adherence to a particular diet, in accordance with 20 Ill. Admin. Code §425.70. Plaintiff then submitted a letter dated April 2, 2003, from the home office of the *Assemblies* of Yahweh, which stated that "we do believe and observe the dietary law of Deuteronomy 14 and Leviticus 11." The letter goes on to state that "it has become our policy to purchase products with the kosher approval symbols." On July 14, 2003, plaintiff filed a grievance in which he referred to himself as a member of the Hebrew faith and a member of House of Yahweh, and grieved the fact that he was not receiving a kosher diet, which he stated was a "religious obligation." The counselor's response states that the chaplain's department indicated that "Inmate does not qualify for a kosher diet as he must adhere to a vegan diet." Copies of the letters and grievance are attached to the complaint.

      Defendant has filed his own affidavit in support of his motion. **See, Exhibit B, Doc. 16**. Keim states that he has been a Chaplain II at Menard since 2000, and that his responsibilities include advising the administrative staff on religious diets. He states that such diets are expensive and require additional administrative attention, and they sometimes require special outside vendors and additional staff to administer the diet. None of those general observations are relevant to the issue here, as Keim does not contend that he refused plaintiff's request for a kosher diet because of the expense or burden involved in providing the diet, or for any other penological interest. Rather, Keim contends that he refused to approve the kosher diet because it was Keim's understanding that plaintiff's declared religion (House of Yahweh) followed a vegan, not kosher, diet. It was evidently possible to get a kosher diet at Menard at the relevant time, as plaintiff did receive kosher trays during Passover in 2003.

Keim states that plaintiff was at Menard from September 25, 2002, to December 28, 2005.  Plaintiff requested a vegan diet and same was approved in October, 2002.  At that time, plaintiff was declared to be a member of the African Hebrew Israelite faith.  On December 30, 2002, plaintiff declared himself to be a member of the House of Yahweh by filling out the required IDOC form, a copy of which is attached to Keim's affidavit.  Key then began requesting a kosher diet.

Keim states in paragraph 21 that "During the time Mr. Key informed me that his religion required a Kosher diet, I had information from the House of Yahweh that stated that the Kosher Fare Common diet was not an acceptable diet for members of the House of Yahweh."  He refers to exhibit 6 to his affidavit, which is a letter from an elder of the House of Yahweh to the chaplain at Dixon Correctional Center.  The letter states that the Kosher Fare Common diet is not acceptable because some of the foods in it are unclean, and that the House of Yahweh recommends a vegan diet.  **See, Exhibit 6, attached to Exhibit B, Doc. 16**.  This letter is signed by David Heimerman, Elder, The House of Yahweh.  The letter was addressed to Chaplain Jones at Dixon and was dated August 24, 2003.  This was some six months after plaintiff began requesting a kosher diet.  The record does not reflect when Keim came into possession of the letter.  However, as plaintiff began requesting a kosher diet in February, 2003, this letter obviously cannot serve as the basis for denying that request.

Defendant's affidavit goes on to state that plaintiff showed defendant several letters from the Assemblies of Yahweh in Bethel, Pennsylvania, which stated that the Assemblies of Yahweh follow a kosher diet.  Keim states that he informed plaintiff that his declared religion was *House* of Yahweh, not *Assemblies* of Yahweh, and that plaintiff did not change his declared religion to

Assemblies of Yahweh. Keim states that he "had to go by the religious practices of House of Yahweh" because that was plaintiff's declared religion. **Keim affidavit, ¶30**.

On April 29, 2005, plaintiff changed his designated religion to Beta Israel, which was not, at that time, in the IDOC's system as a religion. Keim asked that Beta Israel be put into the system, and it was. Members of that faith follow a vegan diet. Plaintiff's request for a vegan diet in 2005 was approved. **Keim affidavit, ¶¶35-36.**

In his deposition, Key confirmed that he was a member of the African Hebrew Israelite faith when he entered Menard in 2002, and that his request for a vegan diet was approved in October, 2002. **Exhibit A, Doc. 16.** The vegan diet was terminated shortly thereafter because of an incident report which stated that plaintiff gave another inmate some of the food off his vegan diet tray.

Plaintiff's understanding of the dietary requirements of his religion are different from Keim's understanding. Plaintiff testified that the House of Yahweh and the Assemblies of Yahweh are different in that they have slightly different doctrinal beliefs, but that they follow the same dietary rules. **Exhibit A, pp. 24-25.** He did receive the kosher diet for Passover in April, 2003. **Exhibit A, p. 38**.

Attached to plaintiff's response **(Doc. 21)** as Exhibit W is a form filled out by Key in which he requested to change his religion from House of Yahweh to Assemblies of Yahweh, dated February 23, 2004. Plaintiff wrote on the bottom of the form "This is per our conversation of [sic] your stating it needs to be change[d]." In paragraph 30 of his affidavit attached to **Doc. 21**, Plaintiff states that he put the form in the locked request box for the chapel, to which only the chaplains have keys, and that he did not receive a response.

In sum, then, Key designated himself as a member of the House of Yahweh. Keim asserts that he refused plaintiff's repeated requests for a kosher diet based on Keim's understanding that members of the House of Yahweh (as opposed to the Assemblies of Yahweh) follow a vegan diet. The only basis for Keim's understanding in the present record is a letter dated August 24, 2003, which is after plaintiff's requests for a kosher diet had been refused and after his grievance about the refusal had been denied. It is obvious that it was possible to provide a kosher diet in this time frame, as plaintiff received a kosher diet during Passover in April, 2003. Although defendant says that plaintiff never asked to change from House of Yahweh to Assemblies of Yahweh, plaintiff has produced evidence that he submitted such a request in February, 2004.

Prison officials may legitimately deny a request for accommodation if they determine an inmate's professed religious beliefs are insincere. **See, Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005)** ("Prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic.") However, that does not appear to be the situation here. Keim does not question the sincerity of plaintiff's professed religious beliefs. Rather, he questions the accuracy of plaintiff's understanding that, as a member of the House of Yahweh, he was obliged to follow a kosher, rather than a vegan, diet.

It is clear that special diets mandated by an inmate's religious beliefs are a religious practice subject to First Amendment protection. ***Hunafa v. Murphy*, 907 F.2d 46, 47 (7 Cir. 1990)**. Defendant denied the request for a kosher diet because he believed that Plaintiff was wrong about the requirements of his religion. However, Keim has not offered any basis for his belief as of the time of plaintiff's initial requests in early 2003. Further, plaintiff has come

8

forward with evidence that, pursuant to Keim's direction, plaintiff attempted to change his designation to Assemblies of Yahweh in February, 2004. This contradicts Keim's assertion that plaintiff never tried to change to Assemblies of Yahweh. Defendant has offered no explanation for why plaintiff was not put on kosher diet at that point. Thus, there are issues of fact which preclude summary judgment.

Defendant has not cited any case with similar facts, i.e., where the prison official denied a request for religious accommodation based on the official's opinion that the inmate was wrong about the requirements of his faith. "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection." ***Thomas v. Review Board of the Indiana Employment Security Division***, **450 U.S. 707, 714 (1981).** The high court recognized that the judicial system is similarly ill equipped to resolve intrafaith differences, which are not uncommon. ***Id.* at 715.** "[T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." ***Id.* at 715-716.** On the record now before the court, defendant has not demonstrated that he is entitled to summary judgment as a matter of law.

Plaintiff's second claim is that Keim denied him permission to possess some religious tapes that were mailed to him by one Reverend Douglas Mitchell. According to the counselor's response to plaintiff's grievance about having to send the tapes back, the mail room consulted Chaplain Keim, who said the tapes were not allowed.

Plaintiff testified in his deposition that the tapes were religious music, and that it was "clearly visible that they were religious tapes." He also testified that the tapes were sent back on "Keim's word" and plaintiff "found out that Chaplain Keim was contacted by the mail room, and

he told them what he told them." **Doc. 16, Exhibit A, pp. 48-49.**

Keim's affidavit states that materials received in the mail go to the personal property department. In paragraph 38, he states "The Chaplaincy Department does not receive religious cassette tapes for offenders. Nor would I have necessarily been notified by the Personal Property Department that religious cassette tapes had been mailed to an offender." This statement does not refute the evidence in the record that the mail room required that the tapes be sent back at the direction of Keim.

Again, on the record now before the court, defendant has not demonstrated that he is entitled to judgment on the cassette tape claim.

The court notes that defendant suggests that he is entitled to qualified immunity. The fact issues which preclude summary judgment also defeat that claim.

### Recommendation

This Court recommends Defendant's Motion for Summary Judgment **(Doc. 15)** be **DENIED**.

Objections to this Report and Recommendation must be filed on or before March 1, 2007.

**Submitted: February 9, 2007.**

                     **s/ Clifford J. Proud**
                     **CLIFFORD J. PROUD**
                     **UNITED STATES MAGISTRATE JUDGE**