UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH M. KEY,<br><br>    Plaintiff,<br><br>    v.<br><br>STEVEN KEIM,<br><br>    Defendant. | Case No. 04-cv-277-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on a Report and Recommendation by Magistrate Judge Clifford J. Proud. In his Report, Judge Proud recommends that Defendant Steven Keim's motion for summary judgment (Doc. 15), be denied (Doc. 25). The Defendant has filed an objection to the report (Doc. 26).

Plaintiff Kenneth Key, an inmate at the Menard Correctional Center in Illinois, brought this *pro se* action under 42 U.S.C. § 1983, alleging the Defendant, while serving as Chaplain at the Menard Correctional Center, violated his First Amendment right to practice his religion. Also, Plaintiff claims Defendant violated these rights when he denied Plaintiff a kosher meal several times in 2003 and 2004. Also, Plaintiff claims Defendant unlawfully denied him access to certain religious tapes.

**I.    Standard of Review**

After being served with a magistrate judge's report and recommendation, a party has 10 days to "[F]ile specific, written objections to the proposed finding and recommendations*."* Fed. R. Civ. P. 72(b). The district judge must review the objected portions *de novo*. *Id*. The court reviews the

non-objected to portions for clear error only. *Id; Johnson v. Zema Systems Corp.,* 170 F.3d 734, 739 (7th Cir. 1999). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b).

On a motion for summary judgment, the Court construes all the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). If no genuine issues as to any material fact exist, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.     The Report's Findings

The Report established the following facts. Plaintiff was at the Menard Correctional Facility from September 25, 2002 to December 28, 2005. He requested and received a vegan diet in October 2002. At that time, Plaintiff was a member of the African Hebrew Israelite faith. On December 30, 2002, he declared himself a member of the House of Yahweh by filling out the required IDOC form. The Plaintiff's complaint alleges he began requesting a kosher diet on February 21, 2003, in writing. Defendant then requested written verification of Plaintiff's membership in a faith group which requires adherence to a particular diet, in accordance with 20 Ill. Admin. Code § 425.70. Plaintiff then submitted a letter dated April 2, 2003 from the home office of the Assemblies of Yahweh stating, "it has become our policy to purchase products with the kosher symbols." During 2003, Plaintiff received kosher trays for the Passover holiday only.

On July 14, 2003, Plaintiff filed a grievance in which he referred to himself as a member of the Hebrew faith and a member of the House of Yahweh. In the grievance, he also complained he

was not receiving a kosher diet, which he stated was a "religious obligation." The Chaplain's department indicated the "inmate does not qualify for a kosher diet as he must adhere to a vegan diet."

Defendant says he had information "from the House of Yahweh which stated the Kosher Fare Common diet was not an acceptable diet for members of the House of Yahweh." This letter was from Elder David Heimerman of the House of Yahweh to Chaplain Jones at Dixon, dated August 24, 2003 (Doc. 16, Exhibit 6, attached to Exhibit B). Plaintiff then alleges he requested to change his religion from House of Yahweh to Assemblies of Yahweh on a form dated February 23, 2004, which he submitted through the Defendant's lockbox. Defendant denies that plaintiff ever attempted to change religion to Assemblies of Yahweh.

Plaintiff also alleges the Defendant denied him permission to possess religious tapes mailed by Reverend Douglas Mitchell. Plaintiff states the tapes were sent back and not given to him on "Keim's word."

The Report found the Defendant could not have used the letter from House of Yahweh to deny kosher meals before August, because the letter was not dated until August 24, 2003. Additionally, Plaintiff's and Defendant's statements conflict as to whether Plaintiff submitted a writing on February 23, 2004, indicating his change of religion to Assemblies of Yahweh. Also, the Report found the Defendant did not refute he had the religious tapes sent back. Finally, the Report found fact issues that still needed determined, which precluded summary judgment on qualified immunity grounds.

**III.   Objections and Analysis**

The Defendant states specifically in his objection, "Since none of the evidence before this

3

Court shows prior to February 23, 2004, the Defendant was required to have granted the Plaintiff's request for a diet prohibited by his designated religion . . . Defendant's Motion for Summary Judgment on this issue should have been granted." (Doc. 26 at 4).

The Report found that prior to the letter from the House of Yahweh elder on August 24, 2003 (Doc. 16, exhibit 6, attached to Exhibit B), Plaintiff had requested kosher meals and provided defendant with various letters from the Assemblies of Yahweh and JCN Prison Ministry. Defendant argues he never knew that Plaintiff required a kosher diet. Defendant contends that Exhibits K, L, and N (Doc. 21), "did not state that a follower of the House of Yahweh was to have a Kosher diet." (Doc. 26). However, the Plaintiff alleges he told the Defendant that his religion required a kosher diet. Additionally, the JCN Prison Ministry brochure (Exhibit K), which Plaintiff alleges he gave to Defendant, contains information that a reasonable jury could use to find the Plaintiff had the religious right to a kosher meal. The JCN Prison Ministry brochure says it applies to "all Hebrew inmates regardless of their affiliations." It further requests "that the correctional facilities use disposable trays, cups, and eating utensils that have been previously used to serve meats," and that each correctional facility respect the "individual belief of inmate" (Doc. 21, Exhibit K). Since the Plaintiff alleges he requested a kosher diet numerous times in 2003 and 2004, and he alleges showing the Defendant verification he required a kosher diet, Judge Proud's determination on this issue was correct.

In addition, Defendant objects to the Report's denial of qualified immunity. "The doctrine of qualified immunity provides that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known."

*McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995) (internal citations omitted). A court should evaluate a qualified immunity claim in two steps, performed in proper order. *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). "First, the court must determine whether the disputed conduct, as alleged, violates a constitutional right; second, the court must determine whether that right was 'clearly established' at the time of the alleged conduct." *Id*.

Assuming the Plaintiff's version of the facts is true, Defendant violated Plaintiff's constitutional rights when he denied Plaintiff a kosher meal. "The Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Prisoners retain the right to exercise their religion in prison, but with limitations. *Tarpley v. Allen County*, 312 F.3d 895, 898 (7th Cir. 2002). However, an inmate's constitutional right is not violated if the burdening regulation is reasonably related to a legitimate penological objective. *Turner v. Safley*, 482 U.S. 78, 87 (1987). Also, prison officials may inquire into whether an inmate is sincere in the practice of his religion. *Cutter*, 544 U.S. at 725.

In this case, the Plaintiff alleges he requested a kosher diet as part of his religious beliefs numerous times (Doc. 1, Exhibits A, B, G, J). The Defendant stated kosher meals were more expensive, but the Plaintiff alleges that cost was not the issue. Instead, Plaintiff alleges he was told his religion did not require a kosher meal. Additionally, the Defendant's motion for summary judgment and objection have not shown that Plaintiff's request would have been a burdensome additional cost. Plaintiff has introduced evidence that a kosher program was already in effect (Doc. 21, Exhibit N). Also, as pointed out in the Report, the Defendant has not questioned the sincerity of the Plaintiff's religious belief and did not offer that as a reason for the denial of the kosher meals.

5

The allegations and evidence support that a clearly established constitutional right could have been violated and none of the excuses to burdening this right apply here.

Defendant did not make specific objections to the Report in regard to Judge Proud's decision on the Plaintiff being wrongfully deprived of religious tapes. So, the standard for this issue is clear error. Plaintiff claims he received religious tapes from Rev. Douglas Mitchell. Also, Plaintiff claims he was denied the tapes and that he went through the proper grievance procedure to contest the decision. However, Defendant had the tapes sent back anyways without following procedure (Doc.1). The Report found the Defendant had not refuted this claim. Additionally, Plaintiff has submitted evidence that the procedure for receiving religious tapes would have required the tapes to go through the Defendant as Chaplain, and then review of the Chaplain's decision by appeals board (Doc. 21, Exhibits AA, BB). A reasonable jury could find that the Defendant wrongfully deprived the Plaintiff of his religious rights. Judge Proud did not clearly err.

**IV      Conclusion**

For the foregoing reasons, the Court ADOPTS the Report in its entirety (Doc. 25) and DENIES the Defendant's motion for summary judgment (Doc. 15).

**IT IS SO ORDERED**
**DATED: JUNE 26, 2007**

    s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**